# EXHIBIT 1

## IN THE DISTRICT COURT OF KINGFISHER COUNTY
## STATE OF OKLAHOMA

|  |  |
|---|---|
| (1)    **GERALD A. BEECHER, as Trustee of the GERALD A. BEECHER LIVING TRUST, an Oklahoma trust; and**<br>(2)    **LUCY C. BEECHER, as Trustee of the LUCY C. BEECHER LIVING TRUST, an Oklahoma trust,**<br><br>          **Plaintiffs,**<br><br>**vs.**<br><br>(1)    **MIDSHIP PIPELINE COMPANY, LLC**<br>**a foreign limited liability company,**<br>(2)    **CHENIERE ENERGY, INC.**<br>**a foreign corporation,**<br>(3)    **STRIKE, LLC,**<br>**a foreign limited liability company,**<br><br>          **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. CJ-2021-46

Kingfisher County Oklahoma
**F I L E D**
MAY – 5 2021
LISA MARKUS, COURT CLERK
BY _____
DEPUTY

## PETITION

Plaintiffs Gerald A. Beecher, Trustee of the Gerald A. Beecher Living Trust, and Lucy C. Beecher, Trustee of the Lucy C. Beecher Living Trust (collectively, the "Beecher Trusts" or "Plaintiffs"), for their claims against Defendants Midship Pipeline Company, LLC, Cheniere Energy, Inc., and Strike, LLC, allege and state as follows:

### Parties, Jurisdiction, and Venue

1.      Plaintiff Gerald A. Beecher, Trustee of the Gerald A. Beecher Living Trust ("GB Trust"), is a resident of Kingfisher County, Oklahoma. The GB Trust is an Oklahoma trust. Plaintiff GB Trust owns, and owned at all relevant times, certain real property in Kingfisher County, Oklahoma, that is the issue of this lawsuit.

2.      Plaintiff Lucy C. Beecher, Trustee of the Lucy C. Beecher Living Trust ("LB Trust"), is a resident of Kingfisher County, Oklahoma. The LB Trust is an Oklahoma trust.

1

Plaintiff LB Trust owns, and owned at all relevant times, certain real property in Kingfisher County, Oklahoma, that is the issue of this lawsuit.

3.      Defendant Midship Pipeline Company, LLC ("Midship"), is a foreign limited liability company that is registered to do business within the state of Oklahoma. Upon information and belief, Defendant Midship maintains offices in the state of Oklahoma. Defendant Midship conducts business within Kingfisher County, Oklahoma, sufficient to allow for personal jurisdiction in this Court.

4.      Defendant Cheniere Energy, Inc. ("Cheniere"), is a foreign for-profit corporation with its principal place of business located outside the state of Oklahoma. Upon information and belief, Defendant Cheniere, through its subsidiaries, owns a portion of Midship that allows Defendant Cheniere the ability to exercise significant influence over the operating and financial policies of Midship. Defendant Cheniere conducts business within Kingfisher County, Oklahoma, sufficient to allow for personal jurisdiction in this Court.

5.      Defendant Strike, LLC ("Strike") is a foreign limited liability company that is registered to do business within the state of Oklahoma. Defendant Strike conducts business within Kingfisher County, Oklahoma, sufficient to allow for personal jurisdiction in this Court. Upon information and belief, Defendant Strike served as the agent of Defendants Midship and/or Cheniere during the times and events subject to Plaintiffs' claims.

6.      This Court has subject matter jurisdiction over this matter and personal jurisdiction over the Parties, pursuant to 12 O.S. § 187.

7.      Venue is proper in this Court pursuant to 12 O.S. § 131(2).

2

## Facts Common to All Allegations

**I.    The Beecher Trusts' Property**

8.    The Beecher Trusts own, as tenants in common, certain property located in Kingfisher County that is at issue in this case, in Section 24, Township 15N, Range 7W in Kingfisher County, Oklahoma; and Section 19, Township 15N, Range 6W in Kingfisher County, Oklahoma (collectively, the "Beecher Property"). The Beecher Property is approximately 6 miles southeast of Kingfisher, Oklahoma.

9.    Clear Creek is a creek that runs through the Beecher Property. Clear Creek flows in a southeast-to-northwest direction. Clear Creek is a tributary to Uncle John's Creek, which runs through Kingfisher, Oklahoma.

10.    In 2014, after receiving approval from the Oklahoma Water Resources Board, Plaintiffs constructed an earthen dam along Clear Creek (the "Beecher Dam") to create a reservoir (the "Beecher Reservoir"). The Beecher Dam design and construction was overseen by a civil engineering firm. The Beecher Dam was located southwest of the intersection of county roads E0850 Road and N2860 Road.

11.    The Beecher Dam was 25 feet high, measuring from stream bed (and the dam's foundation) to the dam's top. The Beecher Dam project included a spillway pipe that is 96 inches wide that feeds into a 48-inch diameter outlet pipe; and a 250-foot-wide emergency spillway designed to pass up to 8,576 cubic feet per second, or nearly 65,000 gallons per second.

12.    The Beecher Reservoir has a capacity of approximately 150 acre-feet, or nearly 50 million gallons. The Beecher Reservoir is utilized for irrigation and other purposes. Among other uses, Plaintiffs sell water from the Beecher Reservoir to oil and gas operators nearby who utilize the water for drilling and/or fracking purposes.

3

**II.     Midship Pipeline Construction on the Beecher Property**

13.     On or about October 26, 2017, Plaintiffs granted a temporary easement and right-of-way on the Beecher Property to Defendant Midship for construction of a pipeline; and granted a permanent easement and right-of-way for Midship's pipeline.

14.     Midship's pipeline easement ran, in part, across a portion of Clear Creek approximately 1 mile south of the Beecher Dam.

15.     Midship, through its contractor, Strike, commenced construction of the pipeline at some point after October 2017 and before May 2019.

16.     The United States of America Federal Energy Regulatory Commission ("FERC") issued its Order Issuing Certificate on August 13, 2018, granting Midship's request for authorization to construct and operate the Midcontinent Supply Header Interstate Pipeline Project ("Midship Pipeline").

**III.     Destruction of the Beecher Dam and Beecher Reservoir**

17.     In late May 2019, multiple rain events occurred in Kingfisher County, Oklahoma.

18.     At the time, Defendants had construction mats stored on Midship's easement on the Beecher Property on or near the banks of a tributary to Clear Creek. Current photographs of the construction mats are attached as Exhibit 1. The construction mats are wooden structures that are some 16 feet long and between four and eight feet wide.

19.     Defendants knew or should have known that the construction mats were prone to float or wash from their location during rain events.

20.     The rain events caused the water level of the tributary to Clear Creek to rise. Defendants' construction mats were swept away by the tributary to Clear Creek.

21.     The construction mats that had been swept away reached a point on Clear Creek at E0860 Road where the creek narrows into several culverts. The construction mats clogged these culverts and backed up the flow of Clear Creek at that location, creating a temporary dam.

22.     Eventually, the force of the backed-up water overcame this temporary dam. The backed-up water destroyed E0860 Road, and a significant amount of water traveled downstream at once.

23.     The water eventually reached the Beecher Reservoir and Beecher Dam, approximately one mile downstream. The artificial dam created by the Defendants' construction mats burst, and the sudden influx of backed-up water caused by the artificial dam created by Defendants' construction mats rapidly filled the Beecher Reservoir and rapidly overtook the Beecher Dam and its emergency spillway. The Beecher emergency spillway was destroyed and the Beecher Dam was damaged.

24.     Immediately following the destruction, Plaintiffs asked Defendants to remove the debris, including, but not limited to, Defendants' construction mats, from the Beecher Property.

25.     Defendants represented that if the Plaintiffs would remove the construction mats from the Beecher Property, the Defendants would remediate any damage Plaintiffs sustained, a statement to which Plaintiffs relied to their detriment, as Plaintiffs spent two to three days removing the construction mats, and Defendants failed to remediate any damage Plaintiffs sustained.

26.     On March 18, 2021, FERC issued an Order on Environmental Compliance in an effort to "resolve a number of outstanding environmental compliance and restoration concerns," including, but not limited to, construction debris.

27.     On March 29, 2021, Midship filed a document with FERC regarding outstanding environmental compliance issues.

**IV.     The Reconstruction of the Beecher Dam and Beecher Reservoir**

28.     Plaintiffs have had to reconstruct the Beecher Dam and Beecher Reservoir, acting as a general contractor to coordinate the remediation effort.

29.     In order to restore the Beecher Property, Plaintiffs have had to pay for the following, at their own expense:

      a.   Material acquisition cost, transportation cost, and installation cost for fill material for the Beecher Dam;

      b.   Time and cost for use of Beecher equipment for removing Defendants' mats from Clear Creek;

      c.   Follow-up time monitoring all repair work performed to ensure stream and dam integrity.

30.     Until the Beecher Dam was rebuilt and the Beecher Reservoir was restored, Plaintiffs' use of the Beecher Reservoir was diminished and/or destroyed, including the use for irrigation and/or water sales.

**Count 1: Negligence/Negligent Injury to Property (Against All Defendants)**

31.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully alleged in this section.

32.     In their construction of the Midship Pipeline, Defendants owed a duty to construct the pipeline in a reasonably prudent manner, including their storage of construction mats.

33.     Defendants breached their duty by, among other reasons, storing construction mats in low-lying areas that were susceptible to surface run-off water.

6

34.     As a result of Defendants' breach, Defendants' construction mats were swept away by Clear Creek and created a temporary dam, which broke, sending an inordinate amount of water suddenly downstream, directly causing the destruction of the Beecher Dam and the Beecher Reservoir.

35.     Plaintiffs were damaged as a result of Defendants' negligence because they were unable to utilize the Beecher Reservoir for irrigation purposes; they were unable to utilize the Beecher Reservoir for sales to energy companies for drilling and/or fracking activities; they were required to remove Defendants' debris from the Beecher Reservoir and Clear Creek at their own expense; and they were required to reconstruct the Beecher Dam and spillway at their own expense.

## Count 2: Negligence *Per Se* (Against All Defendants)

36.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully alleged in this section.

37.     As part of the construction of the Midship Pipeline, Defendants were required to adhere to certain state and/or federal regulations and/or requirements put in place to protect the public and landowners, such as Plaintiffs. These regulations and/or requirements include, but are not limited to, the regulations implemented by the United States of America Federal Energy Regulatory Commission.

38.     Defendants breached their duties to adhere to these regulations and/or requirements.

39.     Plaintiffs were damaged as a result of Defendants' breach.

40.     Defendants' negligence was the direct cause of Plaintiffs' damages, thereby rendering Defendants' negligence *per se*.

**Count 3: Malicious/Willful Injury to Property (Against All Defendants)**

41.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully alleged in this section.

42.    Defendants are liable under a theory of malicious/willful injury to Plaintiffs' property because Defendants' conduct in the construction of the Midship Pipeline was marked by careless disregard, and Defendants' conduct was a direct cause of damages sustained by Plaintiffs.

**Count 4: Private Nuisance (Against All Defendants)**

43.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully alleged in this section.

44.    Defendants acts and omissions surrounding the construction of the Midship Pipeline created a nuisance that interfered with Plaintiffs' use and enjoyment of their land. Such nuisance and/or interference caused damages to Plaintiffs.

**Count 5: Trespass (Against All Defendants)**

45.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully alleged in this section.

46.    Plaintiffs are lawfully entitled to possession of the Beecher Property.

47.    Defendants' construction mats entered upon to the Beecher Property without Plaintiffs' express or implied permission, thereby constituting trespass.

48.    Defendants' unlawful entry upon the Beecher Property damaged Plaintiffs' property.

**Count 6 Deceit (Against All Defendants)**

49.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully alleged in this section.

50. On or about May 21, 2019, employee-agents of Defendant Strike, on behalf of Strike and as agents of the other Defendants, advised Plaintiffs that Defendants did not want to remove Defendants' construction mats from Clear Creek on the Beecher Property, because doing so would require Defendants to locate each piece of construction mats with GPS location and report the location of each piece of construction mats to the Environmental Protection Agency (the "EPA").

51. Instead of doing the work according to EPA guidelines, Defendants' employee-agents provided Plaintiffs with ropes, grappling hooks, and other basic equipment so that Plaintiffs could perform the work themselves.

52. Defendants promised to compensate Plaintiffs for this work and represented to Plaintiffs that Defendants would restore the Beecher Property. Plaintiffs relied upon these promises and representations to their detriment, as Plaintiffs performed the work, were forced to rebuild the Beecher Dam and spillway, and have not been compensated by Defendants.

53. When Defendants made the promise to compensate Plaintiffs for the work and to restore Plaintiffs' property, Defendants knew they would never compensate Plaintiffs for the work or restore Plaintiffs' property.

54. Plaintiffs have been damaged because they had to pay for the restoration of the Beecher Property and further damaged because their work in completing the removal of Defendants' construction mats from the Beecher Property was never initiated or completed by Defendants.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request the following:

A. Actual and consequential damages in a sum in excess of $75,000.00, and in accordance with proof at time of trial;

B. Punitive and exemplary damages because Defendants acted in reckless disregard, intentionally, and/or with malice towards the rights of Plaintiffs; because Defendants were aware of and did not care that there was a substantial and unnecessary risk that this conduct would cause serious injury to Plaintiffs; and because these actions were made without just cause or excuse;

C. Attorneys' fees and costs; and

D. Any other further relief as is just and proper under the facts and circumstances of this case.

E. Plaintiffs reserve the right to amend their claims to assert additional relief from Defendants or any other individuals/entities by amendment to this Petition, in the pretrial conference order, and/or at the trial of this matter.

Respectfully Submitted,

Henry A. Meyer, III, OBA # 6163
Joseph K. Goerke, OBA # 13103
John A. Krahl, OBA # 31124
BEHENNA GOERKE KRAHL & MEYER, PLLC
210 Park Avenue, Suite 3030
Oklahoma City, OK 73102
Telephone: (405)232-3800
Fax: (405)232-8999
hank@lawfirmokc.com
jgoerke@lawfirmokc.com
jkrahl@lawfirmokc.com
*Attorneys for Plaintiffs*

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**



Construction mats on the
Beecher Property

Photos taken April 21, 2021

**EXHIBIT**

1